# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EHT US1, Inc., *et al*.,[1]<br><br>  Debtors. | Chapter 11<br><br>Case No. 21-10036 (CSS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 20, 42, 61, 111 & 149** |

**JOINDER OF DEUTSCHE BANK AG NEW YORK BRANCH TO THE ADMINISTRATIVE AGENT'S (1) OPPOSITION TO: DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF; AND (2) OMNIBUS OBJECTION TO MOTIONS SEEKING RELATED RELIEF INCLUDING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DIRECTING CERTAIN ORDERS IN THE CHAPTER 11 CASES OF EHT US1, INC., *ET AL*. BE MADE APPLICABLE TO ADDITIONAL DEBTOR AND (II) GRANTING RELATED RELIEF**

Deutsche Bank AG New York Branch ("DBNY"), in its capacity as Prepetition Lender, hereby joins the opposition (the "Agent's Opposition") of Bank of America N.A., in its capacity as Administrative Agent (the "Agent") under the Credit Agreement dated as of May 16, 2019 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), to:

(A) the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: EHT US1, Inc.(6703); 5151 Wiley Post Way, Salt Lake City, LLC (1455); ASAP Cayman Atlanta Hotel LLC (2088); ASAP Cayman Denver Tech LLC (7531); ASAP Cayman Salt Lake City Hotel LLC (7546); ASAP Salt Lake City Hotel, LLC (7146); Atlanta Hotel Holdings, LLC (6450); CI Hospitality Investment, LLC (7641); Eagle Hospitality Trust S1 Pte Ltd. (7669); Eagle Hospitality Trust S2 Pte Ltd. (7657); EHT Cayman Corp. Ltd. (7656); Sky Harbor Atlanta Northeast, LLC (6450); Sky Harbor Denver Holdco, LLC (6650); Sky Harbor Denver Tech Center, LLC (8303); UCCONT1, LLC (0463); UCF 1, LLC (6406); UCRDH, LLC (2279); UCHIDH, LLC (6497); Urban Commons 4th Street A, LLC (1768); Urban Commons Anaheim HI, LLC (3292); Urban Commons Bayshore A, LLC (2422); Urban Commons Cordova A, LLC (4152); Urban Commons Danbury A, LLC (4388); Urban Commons Highway 111 A, LLC (4497); Urban Commons Queensway, LLC (6882); Urban Commons Riverside Blvd., A, LLC (4661); and USHIL Holdco Member, LLC (4796). The Debtors' mailing address is 3 Times Square, 9th Floor New York, NY 10036 c/o Alan Tantleff (solely for purposes of notices and communications).

*Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* (the "DIP Motion") [Docket No. 20] and (B) other motions seeking related relief, including the *Debtors' Motion for Entry of an Order (I) Directing Certain Orders in the Chapter 11 Cases of EHT US1, Inc., et al. be Made Applicable to Additional Debtor and (II) Granting Related Relief* [Docket No. 111], which is being filed contemporaneously herewith.[2]

**JOINDER**

1. For the reasons set forth in the Agent's Opposition, this Court should deny the relief sought in the DIP Motion. Although the Eagle Hospitality Group's governance structure is complex—and was made more so by the displacement of the REIT Manager shortly before these cases were commenced—these cases need not be. Fundamentally, these Chapter 11 cases are about 15 U.S. hotels, 12 of which remain shuttered and in caretaker status. Compared to the facts and circumstances of any number of cases that have been before this Court in recent years, the business of these Debtors is simple, the size of the debt stack relatively modest, and the path forward clear. Nothing about these cases suggests that the Debtors need $100 million dollars and 12 months of maximum flexibility—burning approximately $8 million dollar per month—in order to bring these cases to an appropriate resolution. To the contrary, the interests of the Debtors' creditors are best served by ensuring that the Debtors do not unnecessarily delay an orderly process for monetizing the Debtors' assets.

2. Above all, the interests of the Debtors' creditors are not best served by any of the Debtors incurring incremental debt and liens for the express purpose of facilitating value leaking

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agent's Opposition.

from the system. Under the relief requested by the DIP Motion, approximately $3.75 million would be diverted to fund three hotels owned by ***non-debtor*** affiliates. Those non-debtors should be responsible for financing their own needs. Approximately $11 million may be spent paying DIP lender professionals. Those incremental expenses could be largely avoided if the Debtors accepted a DIP loan from the Agent and Prepetition Lenders, whose fees will need to be paid in any event. Another $11 million would be used to pay the structurally subordinated "Trust Expenses" of the Singapore REIT. There can be no justification for paying such structurally subordinated creditors while structurally senior creditors (including structurally senior secured creditors, such as DBNY and the other Prepetition Lenders) are left with the risk of non-payment as the cases drag on and costs continue to mount.

3. These flaws point back to a single core problem: the Debtors' governance. The Debtors were previously managed by the REIT Manager. However, on December 30, 2020, pursuant to direction from Monetary Authority of Singapore, the REIT Trustee removed the REIT Manager despite REIT unitholders having declined to install a replacement manager for the REIT.[3] Since then, the REIT Trustee has acted as the *de facto* manager of the enterprise. *See* First Day Decl. ¶ 1 n.2 (Proposed Chief Restructuring Officer declaring that "In each of my respective roles, I am responsible to and report to officers of the REIT Trustee (as defined below), which acts as the ultimate decision-making authority over the Eagle Hospitality Group"). The REIT Trustee has assumed that role despite the express limitations on its authority under the governing documents.[4]

---

[3] *See* First Day Decl. ¶¶ 85, 88-93.

[4] *See, e.g.,* REIT Trust Deed § 18.14 (REIT Trustee permitted to take key actions, including borrowing and mortgaging or charging assets, only upon the recommendation of the REIT Manager in writing).

4. The REIT Trustee, in turn, answers to the Monetary Authority of Singapore.[5] The Monetary Authority of Singapore, which is not subject to this Court's jurisdiction, has made clear that the REIT Trustee acts as a fiduciary for the REIT unitholders—ultimate equityholders—not creditors of the U.S. Debtors.[6] The result is a proposal to finance an unnecessarily drawn-out and expensive process in search of a "home run" solution for those ultimate equityholders, while saddling the structurally and legally senior creditors of the U.S. Debtors with the risk of that extended cogitation. That approach simply is not consistent with the business judgment required to be exercised by each individual debtor-in-possession. *See In re Tribune Co.,* 464 B.R. 126, 139 (Bankr. D. Del. 2011) ("In the absence of substantive consolidation, entity separation is fundamental.") (citing *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2007)); *In re Molycorp, Inc.*, Case No. 15-11357 (CSS) [Docket No. 97] (Bankr. D. Del. June 30, 2015) (denying proposed DIP financing because it encumbered one silo of debtors for the benefit of a separate silo). The Debtors being asked to incur new liens and debt should be asking themselves what is best for ***their*** stakeholders—creditors, immediate equityholders, and employees—not what might be best for unitholders several-times removed. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 649 (Bankr. D. Del. 2012) ("The directors of a wholly-owned subsidiary cannot allow the subsidiary to be plundered for the parent company's benefit.").

---

[5] *See* First Day Decl. ¶ 109 (explaining that the REIT Trustee is "subject to the regulatory framework of [Singapore's Securities and Futures Act] and the regulations and guidance promulgated thereunder, where applicable, which are administered by [the Monetary Authority of Singapore].")

[6] Uma Devi, *Eagle Hospitality Trust Stuck in Limbo after Unitholders Vote Against Change of Manager*, The Business Times (Dec. 31, 2020) (*available at* https://www.businesstimes.com.sg/companies-markets/eagle-hospitality-trust-stuck-in-limbo-after-unitholders-vote-against-change-of) ("In response to queries from The Business Times on the regulatory implications for EHT, [the Monetary Authority of Singapore] said DBS Trustee has the 'fidiciary [sic] duty to act in the best interest of unitholders'").

5. For all of these reasons, DBNY joins the Agent and respectfully requests that the Court deny the final relief sought by the DIP Motion in its entirety. In particular, DBNY respectfully submits that under no circumstances should the Court authorize the Debtors to incur liens and debt for the purpose of leaking value from the system—whether to pay "Trust Expenses" in Singapore or costs associated with non-debtor hotels. If, however, the Court is inclined to nevertheless authorize the proposed DIP Financing, including the portions that would finance non-debtor costs or Trust Expenses, then DBNY requests that the Court condition that approval on appropriate protections for the creditors that bear the risk of those transfers.

6. Among other things, the Prepetition Lenders' claims, which are secured by the equity of the Debtor PropCos, include, without limitation, "all out-of-pocket expenses incurred by any Agent or any Lender . . . and . . . all fees and time charges for attorneys who may be employees of any Agent or any Lender, in connection with the enforcement or protection of its rights . . . including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans or . . . in connection with any bankruptcy or insolvency of any Loan Party." Credit Agreement § 10.04(a). To the extent that the Prepetition Lenders are fully secured, they will be entitled to payment of those out-of-pocket expenses (including allocated costs associated with in-house counsel assigned to work on this matter) pursuant to Section 506 of the Bankruptcy Code. To the extent that the Prepetition Lenders are undersecured, it is impossible to justify any disbursements of DIP Financing proceeds to or for the benefit the structurally subordinated Trust Expenses or to non-debtor affiliates holding other hotels. However, because it is impossible to know at this stage whether the Prepetition Lenders will ultimately prove to be fully secured, in the event that the Court is inclined to permit any portion of the DIP Financing proceeds to be used to pay either "Trust Expenses" or be used to finance non-debtor affiliates,

DBNY respectfully requests that the Court condition such disbursements on payment of the Prepetition Lenders' out-of-pocket expenses (including allocated in-house counsel costs) in full in the ordinary course during the pendency of these Chapter 11 cases.

## CONCLUSION

**WHEREFORE**, DBNY respectfully requests that the Court (a) deny the relief requested in the DIP Motion as set forth herein and in the Agent's Opposition; and (b) grant such other and further relief as is just and proper.

Dated: February 4, 2021

*/s/ Scott D. Cousins*
Scott D. Cousins (DE Bar No. 3079)
COUSINS LAW LLC
Brandywine Plaza West
1521 West Concord Pike
Suite 301
Wilmington, DE 19803
Telephone: (302) 824-7081
Fax: (302) 295-0331
Email: scott.cousins@cousins-law.com

-and-

Howard Beltzer (admitted *pro hac vice*)
Eric Daucher (admitted *pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3000
Fax: (212) 318-3400
Email: howard.beltzer@nortonrosefulbright.com
         eric.daucher@nortonrosefulbright.com

*Attorneys for Deutsche Bank AG New York Branch*