**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EHT US1, Inc., *et al.*,[1] | ) | Case No. 21-10036 (CSS) |
| | ) | |
| Debtor. | ) | **Related Docket Nos. 20, 61, and 67** |

**OBJECTION OF Q34, LLC F/K/A STAPLETON 3401, LLC
TO THE ENTRY OF A FINAL ORDER AUTHORIZING
DEBTORS TO OBTAIN POSTPETITION FINANCING**

Q34, LLC f/k/a Stapleton 3401, LLC ("Q34"), by and through its undersigned counsel, objects to the entry of a final order authorizing Debtors to obtain postpetition financing and states as follows:

**BACKGROUND**

1. Debtor UCHDIH LLC (the "Debtor") owns and operates a hotel located at the old Stapleton Airport in Denver, Colorado (the "Hotel Property"). Q34 owns and operates an office building (the "Office Property") adjacent to the Hotel Property. There is a subterranean parking garage located at the Office Property (the "Parking Garage").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: EHT US1, Inc.(6703); 5151 Wiley Post Way, Salt Lake City, LLC (1455); ASAP Cayman Atlanta Hotel LLC (2088); ASAP Cayman Denver Tech LLC (7531); ASAP Cayman Salt Lake City Hotel LLC (7546); ASAP Salt Lake City Hotel, LLC (7146); Atlanta Hotel Holdings, LLC (6450); CI Hospitality Investment, LLC (7641); Eagle Hospitality Real Estate Investment Trust (7734); Eagle Hospitality Trust S1 Pte. Ltd. (7669); Eagle Hospitality Trust S2 Pte. Ltd. (7657); EHT Cayman Corp. Ltd. (7656); Sky Harbor Atlanta Northeast, LLC (6450); Sky Harbor Denver Holdco, LLC (6650); Sky Harbor Denver Tech Center, LLC (8303); UCCONT1, LLC (0463); UCF 1, LLC (6406); UCRDH, LLC (2279); UCHIDH, LLC (6497); Urban Commons 4th Street A, LLC (1768); Urban Commons Anaheim HI, LLC (3292); Urban Commons Bayshore A, LLC (2422); Urban Commons Cordova A, LLC (4152); Urban Commons Danbury A, LLC (4388); Urban Commons Highway 111 A, LLC (4497); Urban Commons Queensway, LLC (6882); Urban Commons Riverside Blvd., A, LLC (4661); and USHIL Holdco Member, LLC (4796). The Debtors' mailing address is 3 Times Square, 9th Floor New York, NY 10036 c/o Alan Tantleff (solely for purposes of notices and communications).

2. The Hotel Property and the Office Property share certain services and areas, including without limitation, common curb cuts, common landscaped area, common roadways, common aisles, common parking areas, common loading areas, common sidewalks and a ground level breezeway connecting the Hotel Property and the Office Property (collectively, the "Common Property"), all as set forth in that certain *Amended and Restated Reciprocal Easement Agreement* dated as of November 10, 2016 (the "REA").[2] The REA was recorded with the Recorder's Office for the City and County of Denver Colorado on November 15, 2016. The parties entered into the REA because they recognized that the most favorable use of the Hotel Property and the Office Property was as a single, unified development.

3. The REA, among other things, grants reciprocal easements and establishes the rights and obligations of the parties with respect to the Common Property, including maintenance of the Common Property. The REA is particularly beneficial to the Debtor because it grants the Debtor an easement to use certain parking spaces in the Parking Garage. Upon information and belief, the Debtor would not be permitted to operate the Hotel Property without the right to use these parking spaces.

4. Paragraph 11.b of the REA requires Q34 to maintain the Parking Garage in good repair. Paragraph 11.b further requires the Debtor to reimburse Q34 for 33% of its costs and expenses incurred in maintaining and repairing the Parking Garage as provided paragraph in 13 of the REA. Paragraph 13.a.1 sets forth a detailed procedure requiring the party obligated to perform maintenance and repairs on a particular parcel of Common Property to provide an estimate of the costs and expenses by the first calendar day of each year. Paragraph 13 further provides the other party the right to dispute the estimate, which dispute could result in arbitration

---

[2] A copy of the REA is attached as Exhibit A.

if not resolved consensually. *See* REA ¶¶ 13.1.i and ii. Paragraph 13.a.iv sets forth a similar procedure in the event that the actual costs and expenses exceed the estimate by ten percent.

5. Q34 acquired the Office Property on October 22, 2019. Prior to its acquisition, Q34 determined that significant repairs were needed to the Parking Garage. In order to avoid the uncertainty of the estimation procedures set forth in Paragraph 13.a of the REA, Q34 and the Debtor entered into that certain *Agreement for Hotel Owner's Consent and Approval to Work and Payment Under Amended and Restated Reciprocal Easement Agreement* dated July 31, 2019 (the "Consent and Approval").[3] Pursuant to the Consent and Approval, the Debtor acknowledged its obligation and agreed to pay 33% of the repairs to the Parking Garage in the estimated amount of $751,902[4] periodically within 15 days of receipt of invoices. Consent and Approval ¶ 3. The Consent and Approval further provides that any other procedures for the Debtor's consent to the garage repairs set forth in the REA are deemed waived. *Id.*

6. The Debtor's obligations under the Consent and Approval are secured by the lien referred to in Paragraph 18 of the REA. *Id.* This paragraph provides that defaults under the REA are secured by, among other things, the property in the development owned by the defaulting party and any rents derived therefrom effective upon recording a lien notice. REA ¶ 13.

7. The Debtor has defaulted on its obligations under the Consent and Approval. The Debtor has failed to pay past due invoices for its share of the Parking Garage repair in the amount of $284,452.20. In the coming year, Q34 expects to invoice the Debtor $427,636.90 for additional work to complete the Parking Garage repairs. This amount includes $21,966 for work performed from the date of the last invoice through January 18, 2021. Q34 filed lien notices

---

[3] A copy of the Consent and Approval is attached as Exhibit B.

recorded with the Recorder's Office for the City and County of Denver Colorado on December 10, 2020 and January 6, 2021.[5]  Upon information and belief, Q34's liens are first priority liens.[6]

## THE BANKRUPTCY AND POSTPETITION FINANCING

8.  The Debtor and certain affiliates (the "Debtors") filed voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on January 18, 2021.  The Debtors filed their motion to approve postpetition financing [Docket No. 20] (the "Motion") on January 19, 2021.  On January 21, 2021, the Court entered an order approving the Postpetition Financing on an interim basis [Docket No. 61].

9.  It does not appear that the postpetition financing primes existing liens.  *See* Interim Order ¶ 8(b)).  However, the Motion, the term sheet attached to the Motion and the Interim Order all provide that DIP Lenders will have first priority liens on "one or more segregated deposit accounts maintained by a DIP Loan Party … that (A) shall not contain any funds other than proceeds of DIP Collateral, (B) shall not be subject to any liens other than liens securing the DIP Obligations … and (C) shall be subject to the sole dominion and control of the DIP Agent …."  *See* Interim Order ¶ 8(a)(ii).

## OBJECTION

10.  Q34 objects to the entry of any final order that purports to grant the DIP Lenders liens superior to Q34's liens, including Q34's liens on the rents from the Hotel Property.  While paragraph 8(b) of the Interim Order provides that the DIP Lenders are granted junior liens in property subject to existing liens, Q34's liens on the rents from the Hotel Property will effectively be primed if those rents are deposited into an account contemplated by paragraph

---

[4] The estimate has increased to $796,423.75 due to an increase in the scope of work.

[5] Copies of the lien notices are attached as Exhibit C.

[6] Pursuant to Colorado Law, the priority and perfection of Q34's liens relates back to the filing of the REA.

8(a)(ii) of the Interim Order. In order to protect Q34's liens in the rents from the Hotel Property, any order approving the DIP Financing Motion should require the Debtors to deposit into a segregated account rents from the Hotel Property in the amount of $712,089.10 plus interest calculated in accordance with Paragraph 18.a of the REA and costs of collection in the estimated amount of $50,000.

11. Q34 reserves its right to further object to the entry of a final order including objecting any form of proposed final order.

## CONCLUSION

WHEREFORE, Q34 respectfully requests that the Court enter a final order approving the Postpetition Financing Motion consistent with this objection and granting to Q34 such other and further relief as is just and proper.

Date: February 4, 2021
Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

*William A. Hazeltine*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
bsullivan@sha-llc.com
whazeltine@sha-llc.com

and

WEINMAN & ASSOCIATES, P.C.
Jeffrey A. Weinman, Esq.
730 17th Street, Suite 240
Denver, CO 80202-3506
Telephone: (303) 572-1010
jweinman@epitrustee.com

Attorneys for Q34, LLC f/k/a Stapleton 3401, LLC